IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America,<br><br>           Plaintiff/Respondent,<br><br>vs.<br><br>Jagdish Singh,<br><br>           Defendant/Movant. | CV 07-306-PHX-DGC (HCE)<br>CR 03-540-PHX-DGC<br><br>**REPORT & RECOMMENDATION** |

On February 9, 2007, Jagdish Singh (hereinafter "Movant") filed the instant *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (hereinafter "Motion") (Doc. Nos. 300, 300-2, 300-3[1]). The Government (hereinafter "Respondent") filed its Response on July 23, 2007 (Doc. No. 309). Movant's Reply was filed on August 10, 2007. (Doc. No. 310).

In accordance with the Rules of Practice of the United States District Court for the District of Arizona, this matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. For the following reasons, the Magistrate Judge recommends that the District Court deny the Motion.

---

[1] Doc. Nos. 300-2 and 300-3 are Movant's Memorandum in Support of his Motion and exhibits.

Ordinarily, a court must conduct a hearing on a motion to vacate, set aside or correct sentence "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." 28 U.S.C. § 2255(b). The Motion, files and records in the instant matter conclusively establish that Movant is not entitled to relief. *See Shah v. United States,* 878 F.2d 1156, 1159 (9th Cir. 1989). Consequently, no hearing is required to resolve the present Motion.

## I.    FACTUAL & PROCEDURAL BACKGROUND

Movant, his brothers Gurdev Dhnoay Singh (hereinafter "Gurdev") and Lakhvir Singh (hereinafter "Lakhvir"), and Rashpal Cheema (hereinafter "Cheema") and Sukhwinder Paul (hereinafter "Paul") were charged by indictment with Conspiracy in violation of 18 U.S.C. § 371 (Count 1), Bank Fraud in violation of 18 U.S.C. § 1344 (Counts 2-4), and Fraud and Related Activities in Connection with Access Devices in violation of 18 U.S.C. § 1029 (Counts 5-7).

Movant entered a not guilty plea on all counts. Trial commenced on December 7, 2004. (Motion, (Doc.No. 300-2, p.3)). The jury returned a verdict of guilty on all seven counts on December 17, 2004. (*Id.*)

The Government alleged at trial that by virtue of Movant's employment as a cashier at convenience markets, including four 7-Eleven stores and one Chevron store, Movant obtained ATM/debit card information and PIN numbers from customers when such customers paid for purchases by swiping their ATM/debit cards through a card reader and entering their PIN numbers on a keypad by the cash register that Movant manned.

With this information, Movant enlisted his two brothers Gurdev and Lakhvir along with Cheema and Paul to make cash withdrawals using counterfeit cards containing the stolen ATM/debit card information and stolen PIN numbers.

The Government alleged at trial that Movant's and Co-Defendants' fraudulent activities occurred in four distinct episodes. The first episode occurred from April 21, 2001 to April 24, 2001 when checks were deposited at ATMs in Phoenix crediting bank customers, whose ATM/debit cards and PIN numbers had been compromised when and where Movant

was employed: a 7-Eleven at 5050 W. McDowell Rd. in Phoenix, Arizona. Upon increasing the account balance of these bank customers, Movant and his brothers made near-simultaneous withdrawals from these accounts. Some of these withdrawals occurred at ATMs located in Toronto, Canada. Records from Immigration and Customs Enforcement (hereinafter "ICE") established that Movant left Toronto, Canada and re-entered the United States on April 24, 2001.

The second episode occurred from September 7, 2001 to September 11, 2001 in Tucson, Tempe, Mesa, and Chandler, Arizona. Only unauthorized withdrawals occurred. Banks and credit unions had customers who were victimized. The Movant resided in Tempe, Arizona, at this time and was still employed at the 7-Eleven on W. McDowell Rd. when and where these victims' ATM/debit cards and PIN numbers had been compromised.

The third episode occurred from May 10, 2002 to May 15, 2002 in Tucson, Tempe, Mesa and Chandler, Arizona. Movant had left employment at the W. McDowell Rd. 7-Eleven in the latter part of 2001 and had begun working at a 7-Eleven at 1405 N. Scottsdale Rd. It was established that the unauthorized withdrawals occurred on ATM/debit cards and PIN numbers compromised at the N. Scottsdale Rd. 7-Eleven when Movant was employed there. Movant was the only employee who had worked at both stores.

The fourth episode occurred in May of 2003. Unauthorized withdrawals occurred on ATM/debit cards and PIN numbers compromised at three convenience markets where Movant had been employed: (1) a 7-Eleven store at 5901 W. McDowell Rd.; (2) a 7-Eleven store at 4302 W. McDowell Rd.; and (3) a Chevron at 15827 N. Cave Creek Rd. Cheema and Paul were enlisted and convinced by Gurdev and Lakhvir to come to the United States from England to take part. Movant and his two brothers waited for and ultimately met Cheema and Paul in Phoenix, Arizona.

## II. DISCUSSION

### A. First Claim: Trial counsel's alleged failure to advise Movant of plea bargain process

Movant claims that trial counsel failed to advise him about the process and the benefits of pleading guilty. (Motion (Doc. No. 300-2, p.27)). Moreover, Movant claims he was not even aware of the existence of the plea agreement offered by the Government until he received a copy of the Government's Response to the instant Motion. (Movant's Reply (Doc. No.310, p.2)).

The Government in correspondence dated June 17, 2004 to trial counsel proffered its rationale for calculating Movant's offense level of 26. (Government's Response (Doc. No. 309-3, p.2)). Under the United States Sentencing Guidelines, Movant would be subject to an advisory range of incarceration of 63 to 78 months if Movant was determined to be in Criminal History Category I. Enclosed with the Government's correspondence, was a proposed plea agreement wherein: the maximum statutory term of imprisonment would be 7 ½ years, i.e. 90 months; that "[t]here are no agreements regarding sentencing, and the parties are free to make any recommendations to the court they believe are appropriate"; and "Defendant specifically agrees to make restitution to all victims identified in the investigation of this matter,...,without regard to the charges in the indictment or the count of conviction in an amount determined by the court." (*Id.* at 3-5).

Movant did not enter into a plea agreement and instead proceeded to trial which commenced on December 7, 2004. Movant testified as to his innocence and denied the essential factual elements of guilt. Movant was convicted on December 17, 2004 of all seven counts: Count 1 Conspiracy; Counts 2-4 Bank Fraud; Counts 5-7 Access Device Fraud. Movant was sentenced on June 17, 2005 to: 60 months of imprisonment on Count 1 and 84 months of imprisonment on Counts 2-7 to be served concurrently; 3 years of supervised release on Counts 1 and 5-7; and 5 years of supervised release on Counts 2-4 to run concurrently; restitution in the amount of $252,209.72; and a special assessment of $700.00 pursuant to 18 U.S.C. §3013. (Motion, pp. 6,7 (Doc. No. 300-2)). Having been convicted

1  under these circumstances Movant was not entitled to a two level reduction in the offense
2  level for acceptance of responsibility. *See* U.S.S.G. 3E1.1(a) cmt. n. 2 (2005).

3  Movant's plea offer was not as favorable as that extended to Co-Defendants Cheema
4  and Paul for it was the Government's assessment that Movant's role in the commission of
5  the offense was higher than theirs. (Government's Response (Doc. No. 309, p. 14)); *see*
6  U.S.S.G. §3B1.1, Aggravating Role (2005). After pleading guilty, Co-Defendants Cheema
7  and Paul were sentenced to 10 months of incarceration. (Motion (Doc. No. 300-2, p.27)).

8  It has long been the rule that when a Federal Court Habeas petitioner raises a claim
9  of ineffective assistance of counsel, he waives the attorney-client privilege as to all
10 communications with his allegedly ineffective lawyer. *See Bittaker v. Woodford,* 331 F.3d
11 715 (9th Cir. 2003), *cert. denied* 540 U.S. 1013 (2003); *Wharton v. Calderon*, 127 F.3d 1201,
12 1203 (9th Cir. 1997); *see also* (Doc.No. 304 (Order finding Movant waived his attorney-client
13 privilege with regard to the claims of ineffective assistance of counsel raised in the instant
14 Motion (*citing Bittaker*)). Movant's trial counsel has not provided an affidavit or declaration
15 regarding his discussions with Movant about plea negotiations or plea offer extended. All
16 that is before this Court is Movant's unsubstantiated claims that trial counsel never advised
17 him about the plea bargaining process and the benefits of pleading guilty. (Motion (Doc.No.
18 300-2, p.27)). "It is well-settled that '[c]onclusory allegations which are not supported by
19 a statement of specific facts do not warrant habeas relief.'" *Jones v. Gomez*, 66 F.3d 199, 204
20 (9th Cir. 1995) (*quoting James v. Borg*, 24 F.3d 20, 22 (9th Cir. 1994)).

21 To establish a colorable claim of ineffective assistance of counsel during plea
22 negotiations, a defendant must prove that (1) counsel gave erroneous advice or failed to give
23 information necessary to allow the defendant to make an informed decision whether to accept
24 the plea; and (2) there was a reasonable probability that but for counsel's deficient
25 performance, the defendant would have accepted the plea offer instead of going to trial. *See*
26 *Nunes v. Mueller*, 350 F.3d 1045, 1053 & n.4 (9th Cir. 2003) (recognizing a colorable claim
27 of ineffective assistance of counsel may arise from rejection of a plea agreement). Because
28 failure to make the required showing of either deficient performance or prejudice defeats the

1  claim, the court need not address both factors where one is lacking. *Strickland v.*
2  *Washington*, 466 U.S. 668, 697-700 (1984).

3  In establishing a colorable claim of ineffective assistance of counsel, a movant need
4  not provide detailed evidence, but must provide specific factual allegations that, if true,
5  would entitle him to relief. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).
6  However, a defendant should support such allegations by sworn statements or provide a
7  satisfactory explanation of their absence. *Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir.
8  2007) (denying habeas relief where, *inter alia*, the state court, without holding an evidentiary
9  hearing, denied petitioner's ineffective assistance claim because petitioner *failed to offer*
10 *the state court* "*any evidence* that his counsel's performance was deficient" or that the
11 outcome would have been different but for his counsel's errors) (emphasis added); *Nunes*,
12 350 F.3d at 1054 (petitioner's assertions together with "*ample evidence in the record* before
13 the state court *to support those assertions*" were sufficient to support a colorable claim of
14 ineffective assistance of counsel where, *inter alia*, petitioner *submitted affidavits from*
15 *himself, his mother, and appellate counsel*[2]) (footnote omitted) (emphasis added).

16 Movant proffers only an affidavit wherein he claims trial counsel failed to advise him
17 of the plea bargaining process and benefits of pleading guilty. Such claim stands alone,
18 unsubstantiated by even a modicum of corroborating facts. Thus, Movant has failed in
19 establishing a colorable claim of deficient performance by trial counsel.

20 Movant has also failed to prove prejudice. The plea offer extended to him did not
21 guarantee a range of or cap to sentencing. It simply stated he was subject to as much as the
22 statutory maximum of 7 and ½ years (90 months) of incarceration; there was no agreement

---

[2] Additionally, with specific regard to the prejudice prong of the *Strickland* test, the *Nunes* court stated: the petitioner "needed only to demonstrate that he had *sufficient evidence* for a reasonable fact finder to conclude with 'reasonable probability' that he would have accepted the plea offer, a probability 'sufficient to undermine the result.'" *Nunes*, 350 F.3d at 1054 (*quoting Strickland*, 466 U.S. at 694)) (emphasis added).

- 6 -

1  regarding sentencing; and the parties were free to make any recommendations to the court
2  they believed appropriate.
3     The Government's correspondence, dated June 17, 2004, to trial counsel outlined the
4  Government's calculation of the Offense Level to be 26. The Government did not consider
5  in its calculation an increase of offense level based on Movant's aggravated role of the
6  offense pursuant to U.S.S.G. §3B1.1. Without the proposed plea agreement, Movant's
7  offense level would have minimally increased by 2 to level 28 with a recommended guideline
8  range of 78 to 97 months, or by as much as 4 to level 30 with a recommended guideline
9  range of 97 to 121 months. In either instance under the proposed plea agreement the
10 maximum of 90 months would control the maximum imposable. Movant, after testifying at
11 trial to his innocence and being convicted, was not subject to a 2-level reduction in his
12 offense level having failed to accept responsibility pursuant to U.S.S.G. §3E1.1(a). Movant
13 was sentenced to 84 months for Counts 2-7 concurrent with 60 months for Count 1. Movant
14 has failed to prove how the outcome would have been different if trial counsel had explained
15 the benefits of pleading guilty.
16     B.     Second Claim:  Trial counsel's alleged failure to prove that Movant could not
17            be held accountable for debit card compromises at two locations
18     The Government in its case-in-chief at trial alleged that debit card and PIN number
19 compromises occurred at a 7-Eleven gas station located at 4302 W. McDowell Rd. and at
20 a Chevron gas station located at 15827 N. Cave Creek Rd., both in Phoenix, Arizona.
21 Fraudulent withdrawals from ATMs occurred in May 2003. (Government's Response (Doc.
22 No. 309, p.7)). The Government maintains that Movant worked in some capacity at the
23 15827 N. Cave Creek Rd. Chevron gas station from December 1, 2002 to January 15, 2003
24 based upon a loan application. (*Id.* at pp. 14, 23; Doc. No. 309-4, p. 4). Moreover, the
25 Government cites Movant's testimony at trial "that he worked to help out the owner" of the
26 4302 W. McDowell Rd. 7-Eleven gas station. (Government's Response (Doc. No. 309,
27 p.23)).
28

1  Movant opines that he testified that he had never worked at either gas station.
2 (Motion (Doc. No. 300-2, p. 14)); Movant's Reply (Doc. No. 310, p. 3)). Moreover, Movant
3 argues that neither tax records nor business records from either gas station supports the
4 Government's position that Movant "worked" there. (Motion (Doc. No. 300-2, pp. 14-15)).
5 Movant faults trial counsel for not investigating Movant's work history in order to discount
6 Movant's own hand-written loan application indicating that he worked at the 15827 N. Cave
7 Creek Rd. Chevron gas station; and for failing to protect Movant's credibility "by eliciting
8 appropriate testimony from the [Movant] and by substantiating this fact with other
9 evidences." (Movant's Reply (Doc. No. 310, p. 4)).

10  There are two components that Movant must establish to show trial counsel was
11 ineffective. First, Movant must show that counsel's conduct "was not within the range of
12 competence demanded of attorneys in criminal cases," *Strickland,* 466 U.S. at 687, i.e., did
13 trial "counsel's representation [fall] below an objective standard of reasonableness." *Id.* at
14 688. "[T]here is a strong presumption that counsel's conduct fell within *the wide range* of
15 reasonable representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir.
16 1987) (as amended) (emphasis added). There are an infinite number of ways to provide
17 effective assistance and tactical decisions will not be second-guessed. *Strickland*, 466 U.S.
18 at 689. Trial counsel's actions are reviewed based on facts known, or as reasonably could
19 be known, to trial counsel at the time trial counsel acted. *Id.* at 690. "A tactical decision by
20 counsel with which the defendant disagrees cannot form the basis of a claim of ineffective
21 assistance of counsel." *Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984).

22  Second, Movant must show that trial counsel's deficient performance caused prejudice
23 so significant "as to deprive the defendant of a fair trial, ...whose result is reliable."
24 *Strickland*, 466 U.S. at 687. Movant need only prove a "reasonable probability" of a
25 different result, i.e., "sufficient to undermine confidence in the outcome." *Id.* at 693-694.

26  Movant's defense and testimony was that he was innocent of the charges in that he
27 had nothing to do with debit card and PIN number compromises which resulted in fraudulent
28 withdrawals from ATMs. Movant's emphasis is on the operational definition of "work", i.e.,

- 8 -

he was not formally employed at either the 15827 N. Cave Creek Rd. Chevron station or the 4302 W. McDowell Rd. 7-Eleven station and this is supported by his tax returns and business records for the two businesses.

Movant does concede that he helped out the owner of the 4302 W. McDowell Rd. 7-Eleven station. (Movant's Reply (Doc. No. 310, p. 3)). Moreover, Movant at trial admitted to working at the 15827 N. Cave Creek Rd. Chevron station prior to May 2003; admitted to filling out a financial statement dated January 15, 2003 listing employment information; and admitted that such financial statement indicated he had been employed there as a cashier since December 1, 2002. (Government's Response (Doc. No. 309, pp.23-24)).

As the trier of fact, it is for the jury to weigh the evidence before it and to assess the credibility of witnesses, including a defendant, who testify. That is precisely what the jury did in Movant's trial and found Movant to be not credible. Movant proffers only generalities that "[h]ad counsel investigated Defendant's work history prior to his trial, he could have *easily discounted the credibility* of the handwritten piece of paper *while protecting the credibility of the Defendant* by eliciting appropriate testimony from the Defendant and by substantiating this fact with other evidences." (Movant's Reply (Doc. No. 310, p. 4)) (emphasis added). Movant proffers no specifics regarding what would "discount the credibility" of the financial loan application he himself prepared or what conceivably might have been elicited from Movant by trial counsel coupled with other evidence that would have rehabilitated him in the jury's eyes. At best, it is speculation what this claimed evidence might be; at worst, it is information Movant was privy to and that he failed to communicate to trial counsel to investigate.

Trial counsel's in-trial adjustment to evidence and testimony by Movant was wholly reasonable and tactically correct. Trial counsel was placed in the untenable position of allowing Movant's testimony to credibly stand as presented or to shore up his testimony by parsing and mincing explanations for his own financial loan application and whether he "worked" at the two locations in questions. Trial counsel tactically responded to the facts known to him at trial. There was no deficient performance by trial counsel and Movant,

1  failing to have made the required showing of such, the Court need not address the issue of
2  prejudice to Movant. *Strickland*, 466 U.S. at 697-700.

        C. <u>Third Claim: Trial counsel's alleged ineffectiveness for failing to object to he amount of loss used to enhance Movant's sentence</u>

Movant posits that trial counsel was ineffective for not objecting to the amount of loss used to enhance his sentence and for not objecting to the lower standard of proof of preponderance of the evidence. The United States Sentencing Guidelines provide for resolution of disputed factors, herein the amount of loss:

> When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider *relevant information without regard to its admissibility under the rules of evidence* applicable at trial, provided that *the information has sufficient indica of reliability* to support its probable accuracy.

U.S.S.G. §6A1.3(a), Resolution of Disputed Factors (Policy Statement) (2005) (emphasis added). In calculating loss in excess of $400,000 such that the offense level for Bank Fraud in violation of 18 U.S.C. §1344 (Counts 2-4) and Fraud and Related Activities in Connection With Access Devices in violation of 18 U.S.C. §1029 (Counts 5-7) were increased by 14 levels, along with other offense level increases to reach level 27, the trial court looked at the greater of actual loss or intended loss as alleged in the Conspiracy (Count 1) in violation of 18 U.S.C. §371. *See* U.S.S.G. §2B1.1(b)(1)(H), cmt. n. 3(A)(i) and (ii) (2005). The trial Court was cognizant of the intended loss in the Conspiracy count. (Government's Response (Doc. No. 309, p. 26)).

The trial court considered a variety of information to determine loss at sentencing: (1) a loss chart prepared by an FBI analyst (Motion (Doc. No. 300-2, p. 17)); (2) trial exhibit 63.03 (Government's Response (Doc. No. 309, p. 5, Doc. No. 309-5, pp. 1-23)); Movant's Reply (Doc. No. 310, p. 5)); (3) Court-ordered briefing on the evidence supporting actual and intended losses greater than $400,000 and standard of proof (Government's Response (Doc. No. 309, p. 25)); and (4) trial counsel's argument regarding the Government's burden to prove actual loss attributable to Movant. (*Id.*) Written statements of counsel or affidavits of

- 10 -

1 witnesses have been approved as adequate for consideration at sentencing under a number
2 of circumstances. *United States v. Ibanez*, 924 F.2d 427 (2d. Cir. 1991). Furthermore, at
3 sentencing, the trial court is not restricted to only information that would be admissible at
4 trial. *United States v. Watts*, 519 U.S. 148, 154 (1997) (acquitted conduct); *Witte v. United*
5 *States*, 515 U.S. 389, 399-401 (1995) (conduct subject to subsequent prosecution); *United*
6 *States v. Petty,* 982 F.2d 1365 as *amended by* 992 F.2d 1015  (9th Cir. 1993),  *cert. denied*,
7 510 U.S. 1040 (1994) (reliable hearsay);  *see* also 18 U.S.C. §3661.

8 Movant has confused the trial court's concern with establishing the actual loss
9 sustained with the loss intended by Movant in the various counts of indictment.  According
10 to Movant, the trial court asked: "Why is there a different number between $427,000 total
11 in the [FBI] chart and the *amount of loss for purposes of restitution* which is 200-and-
12 something thousand?" (Motion (Doc. No. 300-2, p. 18)). The trial court was still uncertain
13 what the $427,000 figure included and went on to state that what was needed was evidence
14 and not just a conclusory description of the FBI loss chart's recommendation.  (*Id.*) The trial
15 court in arriving at a sentencing determination of restitution sought to establish an exact and
16 actual amount.

17 Movant is correct that the amount of actual loss ascribable to him by his calculation
18 totals at $264,808.90.  (Motion (Doc. No. 300-2, pp. 16-17)).  The trial court differed and
19 concluded otherwise and instead ordered Movant to pay less restitution in the amount of
20 $252,209.72.  (*Id.* at p.7). This amount *reduced* Movant's conspiracy offense level by two
21 to level 25 exposing Movant to a range of 57 to 71 months of incarceration for which he was
22 sentenced to 60 months to run concurrent with 84 months imposed for counts 2 through 7.
23 *See* U.S.S.G. §2B1.1(b)(1)(G) (2005).

24 Movant states that a higher standard of proof at sentencing, presumably clear and
25 convincing, was required to enhance his offense level by 14 for intended loss.  (*Id.* at p.16).
26 This is true if the level increase in the offense level, based on conduct for which a defendant
27 is *not* convicted, has an extremely disproportionate effect on the sentence for which he is
28 convicted.  *United States v. Mezas de Jesus*, 217 F.3d 638, 642-644 (9th Cir. 2000) (a nine-

- 11 -

level increase in offense level *for an uncharged kidnaping* requires application of the clear and convincing standard); *United States v. Hopper,* 177 F.3d 824, 833 (9th Cir. 1999) (a seven-level increase in offense level based on *acquitted conduct* requires application of the clear and convincing standard). Otherwise, the preponderance of the evidence standard of proof satisfies the Guidelines for establishing facts relevant to sentencing:

> A *convicted* defendant has an interest in the accurate application of the Guidelines within statutory limits, nothing more, nothing less.... That interest is a far cry *in weight and importance* from the liberty interest enjoyed by the defendant at trial.  The statute *for the offense of conviction* sets the constitutional parameters of a possible sentence.  Once those limits are established *by a valid conviction on proof beyond a reasonable doubt,* the defendant's liberty interest has greatly been reduced. However, factfinding is still necessary under legislative schemes to set the sentence accurately within statutory limits, such as...the Guidelines.... [a]s a general matter, due process is satisfied by a *preponderance of the evidence standard of proof* for that factfinding.

*United States v. Restrepo,* 946 F.2d 654, 659 (9th Cir. 1991) (footnote omitted) (emphasis added); *see United States v. Watts,* 519 U.S. 148, 156 (1997) (approving the Sentencing Guidelines comment that use of a preponderance of evidence standard is appropriate to meet due process requirements); U.S.S.G. §6A1.3, Commentary; 18 U.S.C.§3664(e) ("any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence."). The enhancement of Movant's offense level by 14 levels was based on the extent and nature of Movant's conspiracy, i.e. "specific offense characteristics", for which he was convicted.  *See* U.S.S.G. §2B1.1(b)(1)(H) (2005). Application of the preponderance of the evidence standard to the facts supporting the enhancement is correct and due process does not require the application of the clear and convincing standard  because "the *extent of the conspiracy* caused the tremendous increase in...sentence."  *United States v. Harrison-Philpot*, 978 F.2d 1520, 1522 (9th Cir. 1992) (emphasis added). *See also United States v. Melcher-Zaragosa,* 351 F.3d 925 (9th Cir. 2003); *United States v. Rosacker,* 314 F.3d 422 (9th Cir. 2002).

Movant mistakenly opines trial counsel's failure to persuade equates to deficient performance.  Trial counsel's brief of the issues and his effort to hold the Government to task to prove actual amounts of loss attributable to Movant is well within the wide range of

1 reasonable professional assistance required of him. *Strickland,* 466 U.S. at 689. Having
2 failed to prove deficient performance, the Court need not address the issue of prejudice. *Id.*
3 at 697-700.

        D.     <u>Fourth Claim: Trial counsel's alleged ineffectiveness in failing to cross-examine Government witnesses regarding debit card compromise points</u>

6 Movant lists six bank fraud investigators who testified regarding debit card
7 compromise points. Movant opines that trial counsel did not cross-examine "some of these
8 witnesses" but fails to indicate which and why this was below an objective standard of
9 reasonableness. (Motion (Doc. No. 300-2, p. 19)). Movant opines that as to those witnesses
10 trial counsel did question, he did not ask the right questions to undermine the manner of
11 proof utilized by the Government. (*Id.*).

12 The underlying and unstated motivation ascribed to Movant was greed as evidenced
13 by the number of victims whose debit card and PIN information were used at in-common
14 ATM terminals to make unauthorized withdrawals. Working backwards in time, the
15 investigation led to in-common points of compromise where the disparate victims had
16 conducted their own legitimate transactions. Once these in-common potential points of
17 compromise were determined, the investigation then focused on who had been employed or
18 "worked" there during the time the debit cards and PIN information was compromised: the
19 Movant. (Government's Response (Doc. No. 309, pp. 16-17)).

20 The investigation of unauthorized withdrawals from ATM terminals by unknown
21 individuals was linked to the arrest of Cheema when police responded to a call of suspicious
22 activity at an ATM in Gilbert, Arizona. On his person was found a substantial amount of
23 cash in $20 bills, counterfeit ATM cards or gold magnetic stripe cards, and a hand held radio.
24 (*Id.* at pp. 10-11). Cheema later made statements implicating Movant in the fraudulent
25 withdrawal scheme and as to where Movant lived. (*Id.* at p.11). Law enforcement later
26 followed Movant from his residence to a supermarket wherein was a Bank of America.
27 Movant made out two deposit slips in the name of Co-Defendants Gurdev and Lakhvir.
28 Once Movant pulled out cash in $20 bills he was arrested. (*Id.* at pp.11-12). Movant Lakhvir

1    absconded and left the United States. Defendants Paul and Gurdev were ultimately arrested.
2    (*Id.* at p.12).   Defendants Cheema and Paul entered plea agreements and, testifying for the
3    Government, implicated Movant in the fraudulent withdrawal scheme.  (Motion (Doc. No.
4    300-2,  pp. 3, 10-11)).  Cheema and Paul testified at length regarding the Movant stealing
5    PIN numbers from customer ATM debit cards at the stores where he was employed, i.e. the
6    points of compromise.  (Government's Response. (Doc. No. 309,  4-5)).

7    Movant testified as the only witness in his defense.  He conceded he was employed
8    at or had helped at the points of compromise.  (*Id*. at p. 12). He identified his brothers Gurdev
9    and Lakhvir in security camera photos taken during ATM transactions (*Id*.). He admitted
10   seeing his brothers during the time unauthorized withdrawals had occurred.   (*Id.*). He
11   admitted having met Government witnesses Cheema and Paul. (*Id.*).

12   Movant opines that trial counsel failed to cross-examine bank fraud investigators
13   about "actual percentage of probability of those identified locations to be the points of
14   compromise for the alleged losses.  Counsel failed to ask whether there were other locations
15   that were not identified with similar probabilities of being points of compromise."  (Motion
16   (Doc. No. 300-2, pp. 19-20)). Movant has raised a claim of ineffective assistance of counsel
17   and thus waives his attorney-client privilege.  Movant has not submitted an affidavit from
18   trial counsel that questions asked or not asked of the bank fraud investigators were neither
19   reasonable nor the result of sound trial strategy.  *Strickland*, 466 U.S. at 689, *Mancuso v.*
20   *Olivarez*, 292 F.3d 939, 954 - 955 (9th Cir. 2002).  Consequently:

21   Judicial scrutiny of counsel's performance must be highly deferential.  It is all
     too tempting for a defendant to second-guess counsel's assistance after
22   conviction or adverse sentence, and it is all too easy for a court, examining
     counsel's defense after it proved unsuccessful, to conclude that a particular act
23   or omission of counsel was unreasonable.

24   *Strickland*, 466 U.S. at 689.

25   Movant posits that trial counsel's failure to establish an unknown "percentage of
26   probability" would have suggested other points of compromise unassociated with him and
27   rhetorically asks: "How is it possible that the only identified probable points of compromise
28   by the financial institutions had to be the only locations the Government could link the

- 14 -

1  Defendant to?" (Motion (Doc. No. 300-2, p. 20)). The answer to Movant's query is that
2  between debit card owners using PIN information at convenience store gas stations and four
3  individuals later making unauthorized ATM withdrawals using the same PIN information,
4  Movant is the link.  He was employed or helped at those same convenience store gas stations
5  at the time unwitting debit card owners patronized such and the four individuals making
6  unauthorized ATM withdrawals are related to or known to him. Moreover, he was implicated
7  by at least two of the four individuals as the manager or supervisor of the scheme who
8  provided them with the stolen PIN information to make the unauthorized ATM withdrawals.
9  The "percentage of probability" of the confluence of victims, points of compromise, and
10 perpetrators was found to be beyond a reasonable doubt and not coincidental.

11 Trial counsel's questioning of bank fraud investigators has not been established by
12 Movant to have been unreasonable and deficient performance.  The Court need not address
13 the issue of prejudice to Movant. *Srickland*, 466 U.S. at 697-700.

14     E. <u>Fifth Claim: Trial counsel's alleged ineffectiveness in not obtaining an</u>
15         <u>impeachment instruction</u>

16 Movant posits that trial counsel was ineffective "for *failing to obtain* proper
17 impeachment instruction *against... two key Government witnesses.*" (Motion (Doc. No. 300-
18 2, p. 20)) (emphasis added). Movant does not argue that the instructions given by the trial
19 court was improper or not a correct statement of the law.  In fact, the instructions given by
20 the trial court were proper and correct statements of the law for the Ninth Circuit. *See* Ninth
21 Circuit Manual of Model Jury Instructions, Criminal, 3.9 (Credibility of Witnesses), 4.8
22 (Impeachment Evidence-Witness), 4.9 (Testimony of Witnesses Involving Special
23 Circumstances-Benefits) (2003); Government's Response (Doc. No. 309, pp. 21-22)).

24 Movant proposes the following instruction:

25 You have heard evidence that Rashpal Cheema and Sukhwinder Paul admitted
    lying under oath on a prior occasion, *and have lied under oath again during*
26 *their testimony in this trial.* You may consider the evidence of *lying under*
    *oath repeatedly* to be sufficient to disregard their testimony and offer no
27 weight to the testimony of these two witnesses.

28

- 15 -

(Motion (Doc. No. 300-2, pp. 21-22) (emphasis added)). To instruct the jury as Movant proposes would constitute comment on the evidence by the trial court. Moreover, the trial court would invade the province of the jury in that the issue was whether witnesses Cheema and Paul lied in their trial testimony. It is the jury's *exclusive function,* i.e. to the exclusion of the trial court, to (1) determine witness credibility; (2) resolve evidentiary conflicts, and (3) draw reasonable inferences from proven facts. *United States v. Brady,* 579 F.2d 1121, 1127 (9th Cir. 1978); *United States v. Kelly,* 527 F.2d 961, 965 (9th Cir. 1976); *United States v. Nelson,* 419 F.2d 1237, 1241 (9th Cir. 1969).

Trial counsel did not ask for and obtain a clearly improper instruction. Trial counsel conduct was well "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Consequently, trial counsel's performance was not deficient, i.e., trial counsel did not make an error so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. Nor was Movant prejudiced by trial counsel's failure to obtain that which Movant was not entitled to: an improper jury instruction.

F. <u>Sixth Claim: Trial counsel's alleged ineffectiveness in not requesting a downward departure for Movant's exceptional alien status</u>.

Movant opines that trial counsel was ineffective for "fail[ing] to investigate [Movant's] imprisonment conditions and request a downward departure for his exceptional alien status and [Movant] was prejudiced." (Motion (Doc. No. 300-2, p. 23)). Trial counsel did in fact address the trial court to depart downward by 18 to 24 months from the 70 to 87 months the trial court concluded was the recommended Sentencing Guidelines range. (Government's Response (Doc. No. 309, p. 26)). Trial counsel cited to the trial court difficulties Movant would face because of his religion and nationality. (*Id.*). The trial court concluded these factors were not extraordinary to warrant downward departure. (*Id.* at p.27). Factors such as national origin or religion are not relevant in the determination of a sentence. U.S.S.G. §5H1.10 (2005).

Movant further opines that his deportable alien status renders him: (1) ineligible for early release to a half-way house; (2) ineligible for immigration review programs prior to release; (3) ineligible for specific dietary requirements based upon his religion; and (4) ineligible for educational and work programs because he is incarcerated at a private contract correctional facility, unlike Bureau of Prisons deportable aliens. (Motion (Doc. No. 300-2, p. 23)). A district court has discretion to consider downward departure on the ground of deportable alien status in non-illegal re-entry cases. *See United States v. Charry Cubillos,* 91 F.3d 1342 (9th Cir. 1996); *United States v. Davoudi*, 172 F.3d 1130 (9th Cir. 1999). *See also United States v. Martinez-Ramos,* 184 F.3d 1055, 1057-59 (9th Cir. 1999)(deportable alien status cannot be grounds for downward departure for defendants convicted of illegal reentry under 8 U.S.C. §1326). The trial court considered Movant's "history and characteristics...and [trial counsel's] comments about possible treatment in prison" and concluded that Movant's circumstance did not take his case out of the Sentencing Guidelines' heartland. (Government's Response (Doc. No. 309, p. 27) (*quoting* June 17, 2005 Transcript at p. 50)). *See United States v. Koon*, 518 U.S. 81, 96 (1996)*, superseded on other grounds by statute as discussed in United States v. Clough,* 360 F.3d 967 (9th Cir. 2004). Herein, the trial court's refusal to depart downward was based on the court's exercise of its discretion under the circumstances, and was not an indication that the court lacked power to depart. *See United States v. Tucker*, 133 F.3d 1208, 1214, 1219 (9th Cir. 1998) (A district court's discretionary refusal to depart from the Sentencing Guidelines is not reviewable on appeal); *United States v. Garcia-Garcia*, 927 F.2d 489, 491 (9th Cir. 1991) ("[t]he court's silence regarding authority to depart is not sufficient to indicate that the court believed it lacked power to depart."). The trial court properly exercised its discretion not to depart downward.

Movant opines that trial counsel failed to anticipate prior to sentencing, the Bureau of Prisons placement of Movant. The Bureau of Prisons may designate the place of a prisoner's imprisonment, whether such is maintained by the federal government or otherwise, taking into consideration anyone of a number of factors. *See* 18 U.S.C. §3621(b). A deportable alien is not eligible for "re-entry into the community." *See* 18 U.S. C. §3624(c).

- 17 -

1  In fact, pending deportation, a deportable alien must be released to the custody of the
2  Attorney General.  8 U.S.C.§1252(a)(2)(A).  Movant cites as supporting authority that the
3  private contract correctional facility he is housed in "does not even consider requests for the
4  Residential Drug Abuse Prevention Program" as a Bureau of Prisons facility would.  (Motion
5  (Doc. No. 300-2, p. 23; *see also* Doc.No. 300-3, p.2)); *see* 18 U.S.C. §3621(e)(2).  This is
6  not persuasive: there is nothing in the record that Movant had a substance abuse problem,
7  qualifies for this program, applied to participate in this program and was denied admission.

8  Trial counsel's elocution to the trial court at sentencing fell "within the wide range of
9  reasonable professional assistance...." *Strickland*, 466 U.S. at 698.  Movant posits that trial
10  counsel's unpersuasive arguments for downward departure equate to deficient performance.
11  Trial counsel, in prevailing norms, made the adversarial process work and he is strongly
12  presumed to have rendered  adequate assistance and to have exercised reasonable
13  professional judgement. *Id.* at 690. On the instant record, Movant has failed to establish that
14  trial counsel's performance at sentencing on this issue was deficient.  Because Movant has
15  failed to establish deficient performance, the Court need not address prejudice.  *Id.* at 697-
16  700.  Moreover, even if the Court were to address prejudice, for the reasons discussed above,
17  Movant has failed to establish prejudice as well.

18  **III.   CONCLUSION**

19  Because Movant has failed to establish that trial counsel was ineffective, the Motion
20  should be denied.

21  **IV.   RECOMMENDATION**

22  For the foregoing reasons, the Magistrate Judge recommends that the District Court
23  deny Movant's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 300).

24  Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within
25  ten days after being served with a copy of this Report and Recommendation.  A party may
26  respond to another party's objections within ten days after being served with a copy thereof.
27  Fed.R.Civ.P. 72(b).  If objections are filed, the parties should use the following case number:
28  CV 07-306-PHX-DGC / CR 03-540-PHX-DGC.

1  Failure to file timely objections to any factual or legal determination of the Magistrate
2  Judge may be deemed a waiver of the party's right to *de novo* review of the issues.  *See*
3  *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S.
4  900 (2003).

5  DATED this 20th day of March, 2009.

_____
Héctor C. Estrada
United States Magistrate Judge